## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JERLON BURRELL,

        Plaintiff,                Case No.:
                                    Hon:

    v.

NORTHVIEW PUBLIC SCHOOLS,
WEST OAKVIEW ELEMENTARY SCHOOL,
CHRISTINA HINDS, *in her individual*
*capacity and official capacity as Northview*
*Publics Schools Superintendent*; TONY QUINN,
*in his individual capacity and official*
*capacity as West Oakview Elementary Principal*; and
TIM CHRISTIAN, *in his individual capacity and official*
*Capacity as Northview*
*Publics Schools Director of Facilities and Transportation*

    Defendants.

---

David Nacht (P47034)
NACHTLAW, P.C.
Attorney for Plaintiff
501 Avis Dr., Ste. 3
Ann Arbor, MI 48108
734-663-7550
dnacht@nachtlaw.com

---

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, Jerlon Burrell, by and through his counsel,

NACHTLAW, P.C., and brings his complaint as follows.

## INTRODUCTION

1.    Plaintiff, Jerlon Burrell (hereinafter referred to as "Plaintiff"), brings

this civil rights action against Northview Public Schools (hereinafter referred to as "NPS" or the "District"), NPS Superintendent Christina Hinds ("Hinds"), West Oakview Elementary School  ("West Oakview") and Principal Tony Quinn ("Quinn"), and NPS Director of Facilities and Transportation Tim Christian ("Christian", collectively, "Defendants") to remedy discriminatory racial harassment and a hostile education environment, in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d *et seq.* ("Title VI"); the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments of the U.S. Constitution and 42 U.S.C. § 1983; and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), M.C.L. 37.2101 *et seq.*

2.     Plaintiff, at just five years old, was experiencing consistent and severe bullying while attending West Oakview, a school within the Northview Public Schools district.

3.     Specifically, about three months before March 2023, Plaintiff had reported being bullied for his race, as an African-American.

4.     The District did nothing, which led to the explosive events of March 2023; on March 9, 2023, Plaintiff was *physically assaulted* by his bully, a sixth grader.

5.     Plaintiff, just a small kindergartener, had his head bashed repeatedly against the wall of the bus and his stomach punched.

2

6.    These kids even used his backpack, his coat, and his stuffed animal to suffocate Plaintiff, repeatedly telling him he should die.

7.    Plaintiff did his best to relay to his parents what occurred, which led to a report and an investigation, which originally only resulted in a five-day suspension for the bully.

8.    Had Defendants taken Plaintiff's complaints seriously, he would not have been assaulted in the way he was.

9.    Plaintiff's complaints were taken less seriously because he is African-American.

## PARTIES, JURISDICTION, AND VENUE

10.    Plaintiff Jerlon Burrell is a seven-year-old African-American boy living in Grand Rapids, Michigan, Kent County.

11.    Defendant NPS is a Michigan public school district pursuant to the School Code of 1976, M.C.L. 380.1 *et seq*., with principal offices in Kenty County, Michigan.

12.    Defendants Hinds, Quinn, and Christian are adult individuals employed by NPS.

13.    The events giving rise to this lawsuit took place at West Oakview Elementary School and on the bus coordinated by the school, within NPS, while Plaintiff was a student.

14.    This Court has jurisdiction pursuant to 28 U.S.C. 1331, 1343(a)(3), 1343(a)(4), 2201, and 2202 and 42 U.S.C. 1983.

15.    Supplemental jurisdiction over Plaintiff's state law claims is proper pursuant to 28 U.S.C. 1367 as they arise from the same case and controversy.

16.    Exhaustion of administrative remedies is not required and/or is futile under the circumstances of this case. Plaintiff's injuries cannot be redressed by administrative due process procedures as he seeks monetary damages to compensate him for Defendants' deliberate indifference.

17.    Venue is proper in the Western District of Michigan pursuant to 29 U.S.C. § 1391(b), as the events giving rise to Plaintiff's claims occurred within this judicial district.

## GENERAL ALLEGATIONS

18.    Plaintiff began attending West Oakview in the fall of 2022, for the 2022-23 academic year.

19.    Before March 2023, Plaintiff was a happy child, energetic, good with others, and independent.

20.    Starting in 2023, Plaintiff began to experience bullying on the bus.

21.    Plaintiff first reported the bullying to his parents about a week before the incidents described below, on or about the last week of February 2023.

22.    Plaintiff was experiencing both physical and verbal bullying on the bus.

23.     Inquiries by Plaintiffs' parents about the bullying went unanswered.

24.     Since the offending student (hereinafter referred to "O.S.") was never reprimanded, the bullying became physical and increasingly violent.

25.     This bullying was captured on the bus cameras, footage held by the District.

26.     On March 7, 2023, the bus cameras captured the following:

- O.S. threatened to "fuck [Plaintiff] up;"

- O.S. pushed Plaintiff and took his personal items without consent;

- O.S. began hitting Plaintiff;

- Other students repeatedly asked O.S. to stop because they could hear Plaintiff asking O.S. to stop bullying and assaulting him;

- O.S. shoves Plaintiff's personal items in his face, hurting his eye;

- When Plaintiff tried to defend himself from the assaultive behavior, O.S. threatened Plaintiff with more violent behavior and called him a "nigga;"

- O.S. repeatedly used racial epithets against Plaintiff; and

- O.S. made fun of Plaintiff when he expressed pain and when he started crying.

27.     The abuse spanned approximately 15 minutes.

28.     On March 8, 2023, the bus cameras captured the following:

- A student on the bus called Plaintiff "a monkey," which leads another student to say "you can't say that to him!;"[1]

- A student called Plaintiff a "nigga;"

- O.S. sat next to Plaintiff and began antagonizing Plaintiff by tapping him on the head;

- Plaintiff gets called racial epithets repeatedly;

- O.S. begins hitting Plaintiff in the head, despite Plaintiff's attempts to protect and defend himself;

- O.S. *rubbed his hands together* preparing to hit Plaintiff, and hits him in the face;

- Other students became concerned, stating O.S. should not hit Plaintiff so hard;

- O.S. continues to hit Plaintiff in the head, alternating between bouncing Plaintiff's head between his hands and slamming Plaintiff's head into the seat;

- O.S. pins Plaintiff against the seat and even lowered him onto the ground while pressing on his back; and

- Plaintiff is heard in the video screaming, asking him to please stop, crying that he's "just a kindergartener, stop!"

29.    Despite all of this commotion on two days in a row, the bus driver did

not notify the District of what was going on during these rides.

---

[1] Other students stated in the District's investigation report that they felt pressure to follow O.S.'s footsteps in abusing Plaintiff, either because they were scared, felt they could not make things better, or felt peer-pressured to do what the older, "cool kids" were doing.

30.    The abuse spanned approximately 9 minutes.

31.    While March 7 and 8, 2023 saw an escalation in the bullying, it was

even *worse* on March 9, 2023.

32.    The bus cameras captured the following:

- A student commented that O.S. would be "beat[ing] that kid again," referring to Plaintiff, presumably, given that he had been experiencing violent assaults two days in a row;

- O.S. once again takes Plaintiff's personal items, which leads Plaintiff to try defending himself;

- Due to the commotion, it was unclear from the audio who made the comment – likely O.S. given what follows – but a student stated "help me beat up this little kid again" referring to Plaintiff;

- O.S. used both of his hands to push Plaintiff downward, towards the ground, and took Plaintiff's boot off of his foot;

- O.S. takes Plaintiff's personal item – his stuffed toy – and stomped on it;

- While Plaintiff is under the seat following O.S.'s assaultive behavior, a cry is heard;

- The video shows Plaintiff's hand trying to hold on to the seat but O.S. pushes his hands down;

- O.S., while physically assaulting Plaintiff, mocked Plaintiff by using his phone to take pictures of Plaintiff;

- Racial epithets are thrown around about Plaintiff by students, calling him a "black monkey" and a "black munchkin;"

- O.S. begins to try to destroy Plaintiff's stuffed toys while other students *cheer*, as if this were an amusing event;

7

- Plaintiff is seen rubbing his head, trying to avoid looking at O.S.;

- A student said "come on enough!" clearly signaling that the abuse Plaintiff was experiencing was getting out of hand;

- The bus driver yells at the students to sit down, indicating that they were aware that something was going on but doing nothing to assess why there was so much commotion;

- When Plaintiff tries to get his toy back, O.S. grabbed Plaintiff by the shoulders and starts shaking Plaintiff against the bus seat;

- At this point, students are saying "monkey" and "monkey boy" and pointing out that gang signs were being used against Plaintiff by O.S.;

- O.S. punched Plaintiff in the stomach, putting Plaintiff back under the seat;

- When Plaintiff tried to get up, O.S. repeatedly hit Plaintiff so that he could not get up;

- O.S. forces Plaintiff's head down towards the ground and repeatedly shoves him;

- Students are saying things like "Die! Die!;"

- O.S. aggressively picks Plaintiff up, puts him on the seat, and hits him in the head;

- O.S. then grabbed Plaintiff from the back and threw him back down onto the ground, hitting him on the head while he was there;

- No matter how many times Plaintiff turns his back to O.S. to stop the bullying, O.S. repeatedly hits him and shoves him;

- O.S. pulled on Plaintiff's braids multiple times;

- O.S. reached down and grabbed Plaintiff's leg, leading a student to say out loud "Oh shoot this is going to be torture;"

- While on the phone, O.S. shoves Plaintiff with his shoulder;

- O.S. also shoved Plaintiff by using his coat or backpack, eventually ending up on Plaintiff;
- O.S. used his hands to push Plaintiff's head down; and

- O.S. *pressed his foot* on Plaintiff's *head.*

33.     The abuse lasted about 14 minutes from what was recorded; the video stopped after 13 minutes and 31 seconds.

34.     Understandably, Plaintiff came off the bus traumatized and hysterical.

35.     Plaintiff's parents were concerned and asked Plaintiff what occurred.

36.     Horrified by what they heard, they reported the incident to the school and District.

37.     The District started an investigation, though there was delay in getting the relevant evidence and even just the investigation started.

38.     The Transportation Director Defendant Tim Christian, upon being notified of the incidents immediately after March 9, 2023, did not immediately start an investigation.

39.     It took nearly an entire school week for Defendant Christian to start looking into the matter, and Plaintiff's father had to confront him in order to get the process started.

40.    During that investigation, there were issues in getting access to the videos of the bus incidents.

41.    Plaintiffs' parents had to repeatedly request access to the video and even had to request multiple times that the evidence be reviewed by the school.

42.    Plaintiff's parents were given different excuses, including that they did not have a right to see the video and, incredibly, that there was no wrongdoing captured in the videos, the videos described above.

43.    Eventually, Plaintiff's parents were able to see the true extent of the abuse Plaintiff was subjected to *and* the racially hostile language being used against him.

44.    These videos were used as evidence collected throughout the process, though it is unclear if they were even considered by the District when deciding O.S.'s punishment.

45.    Additionally, students on the bus were interviewed.

46.    Notably, the investigation report including the following information:

- O.S. did not deny his behavior and stated that his violent behavior was due to Plaintiff "poking" him;

- Witness 1 confirmed the abuse and stated he felt like "he had to go along with situation" as he was worried about retaliation by O.S. if he did not participate;

- Witness 2 shared that he was threatened by O.S. for "snitching" and despite engaging in some of the bullying behavior, he did take steps to

10

see if Plaintiff was okay and then walked him to the bus driver to report the March 9, 2023 incident;

- Witness 3 shared that she witnessed the assaultive behavior and was told to delete videos she had taken of the abuse by the bus driver.

- The bus driver claimed that she did not know about the attacks until Witness 3 and Plaintiff reported them on March 9, 2023.

47.    In the report issued on May 2, 2023, the District found that O.S. had violated the "Northview Public Schools Code of Conduct, including the Transportation Policies, Rules, and Guidelines," "Board Policy 5610 Physical and Verbal Assault; and "Board Policy 5517.01 Bullying by engaging in bullying; physical and verbal assault; and intimidation/menacing."

48.    Despite acknowledging the horrible racial epithets levied at Plaintiff, said to him *directly* while being verbally and physically abused, O.S. could not be found responsible for violating the District's policies on Nondiscrimination and/or Anti-Harassment.

49.    Plaintiff was the only student being assaulted and as shown in the videos, he was one of about two African-American students on the bus.

50.    Upon reasonable belief, O.S. received a 10-day suspension and a no-trespass letter for the remainder of the 2022-2023 school year, which ended about a month after the receipt of the investigation report.

51.    Defendants failed to protect Plaintiff.

52.    Further, Defendants failed to properly investigate Plaintiff's well-founded concerns that his race played a role in his repeated assaults.

53.    Defendants' carelessness is evident in the "sanctions" they placed against O.S.: a mere ten-day suspension and one month of being trespassed from school property.

54.    Defendants' failure to protect Plaintiff has resulted in permanent and significant damage.

55.    Plaintiff experienced serious physical injury, reporting terrible abdominal pain as well as head and body soreness from the abuse.

56.    Plaintiff is not the same happy child anymore; after the incident, before even learning to multiply, Plaintiff began to think about death.

57.    Plaintiff has become more hostile and aggressive as he now fears being hurt by anyone, not just strangers.

58.    Plaintiff is now terrified of noises, even just someone raising their voice is enough to cause him anxiety.

59.    Plaintiff does not even play the same games he loved anymore because anything that requires hiding, or the element of surprise shakes him to his core.

60.    Plaintiff is even mistrusting his own family.

61.    Plaintiff is plagued with flashbacks of the assaults and nightmares and cannot stand the idea of being by himself.

62.     Defendants failed to follow their own policies.

63.     Defendants not only failed to protect Plaintiff from the assaults but also played down the incident by completely disregarding the blatant racial discrimination and harassment he went through.

**COUNT I**
**Race Discrimination in Violation of Title VI of the Civil Rights Act of 1964**
**42 U.S.C. 2000d *et seq*.**

64.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

65.     Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

66.     As a public school district, Defendant NPS received and continues to receive federal financial assistance.

67.     A public school district can be held liable under Title VI for deliberate indifference to student-on-student racial harassment. *Williams v. Port Huron Area Sch. Dist. Bd. of Edu*c., No. 06-14556, 2010 WL 1286306, at *8 (E.D. Mich. Mar. 30, 2010), rev'd and remanded sub nom. *Williams v. Port Huron Sch. Dist*., 455 F. App'x 612 (6th Cir. 2012).

68.     Plaintiff was subjected to racial harassment that was so severe,

13

pervasive, and objectively offensive that it deprived Plaintiff of access to the educational opportunities and benefits provided by Defendant NPS.

69.     The harassment was so severe, it resulted in *multiple* physical assaults.

70.     Defendants had actual knowledge of the racial harassment, evidenced by, among other things, Plaintiff's reports of bullying to the school and the video footage of the racial harassment and violence.

71.     Defendants were deliberately indifferent to the racial harassment Plaintiff experienced; their response (or lack thereof) to the harassment Plaintiff reported was clearly unreasonable in light of the known circumstances described herein, including, but not limited to, repeated use of several of the most inflammatory racial slurs in the American lexicon.

72.     Defendants' actions caused Plaintiff to suffer significant emotional distress and loss of educational opportunity, as set forth herein.

## COUNT II
### Violation of the Equal Protection Clause
### of the Fifth and Fourteenth Amendments to the U.S. Constitution
### 42 U.S.C. § 1983
### *As to Defendants Hind, Quinn, and Christian*

73.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

74.     The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution provides that "no state shall…deny to any person within its jurisdiction

14

the equal protection of the laws."

75.    42 U.S.C. § 1983 protects against the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by persons acting under the color of law.

76.    Plaintiff was subjected to racial harassment that was so severe, pervasive, and objectively offensive that it deprived Plaintiff of access to the educational opportunities and benefits provided by Defendant NPS.

77.    Defendants Hind, Quinn, and Christian acted under color of law through their authority as Superintendent of NPS, a public school district, and principal of West Oakview Elementary School.

78.    Defendants Hind, Quinn, and Christian had actual knowledge of the racial harassment, evidenced by, among other things, Plaintiff's reports of bullying to the school and the video footage of the racial harassment and violence.

79.    Defendants Hind, Quinn, and Christian were deliberately indifferent to the racial harassment Plaintiff experienced; their response (or lack thereof) to the harassment Plaintiff reported was clearly unreasonable in light of the known circumstances described herein, including, but not limited to, repeated use of several of the most inflammatory racial slurs in the American lexicon.

80.    Defendants Hind, Quinn, and Christian, through their deliberate indifference to the harassment described herein, violated Plaintiff's clearly

established constitutional rights of which a reasonable person would have known.

"It has long been established that deliberate indifference to harassment violates

students' right to equal protection." *Williams v. Port Huron Area Sch. Dist. Bd. of*

*Educ.*, No. 06-14556, 2010 WL 1286306, at \*17 (E.D. Mich. Mar. 30, 2010), rev'd

and remanded sub nom. *Williams v. Port Huron Sch. Dist.*, 455 F. App'x 612 (6th

Cir. 2012). They are therefore not entitled to qualified immunity.

**COUNT III**
**Violation of the Substantive Due Process Clause**
**of the Fifth and Fourteenth Amendments to the U.S. Constitution**
**42 U.S.C. 1983**
*As to Defendants Hind, Quinn, and Christian*

81.     Plaintiff incorporates the preceding paragraphs as if fully set forth

herein.

82.     The Due Process Clause of the Fourteenth Amendment to the U.S.

Constitution provides that "no state shall…deprive any person of life, liberty, or

property without due process of law."

83.     42 U.S.C. § 1983 protects against the "deprivation of any rights,

privileges, or immunities secured by the Constitution and laws" by persons acting

under the color of law.

84.     Plaintiff was subjected to racial harassment that was so severe,

pervasive, and objectively offensive that it deprived Plaintiff of access to the

educational opportunities and benefits provided by NPS.

16

85.     Defendants Hind, Quinn, and Christian acted under color of law through their authority as Superintendent of NPS, a public school district, principal of West Oakview Elementary School, and Director of NPS Director of Facilities and Transportation.

86.     Defendants Hind, Quinn, and Christian had actual knowledge of the racial harassment, evidenced by, among other things, Plaintiff's reports of bullying to the school and the video footage of the racial harassment and violence.

87.     Defendants Hind, Quinn, and Christian were deliberately indifferent to the racial harassment Plaintiff experienced; their response (or lack thereof) to the harassment Plaintiff reported was clearly unreasonable in light of the known circumstances described herein, including, but not limited to, repeated use of several of the most inflammatory racial slurs in the American lexicon.

88.     Defendants' "limited action in the face of a pattern of bullying and violence targeted at one student" and their "decision not to enforce rules against bullying or punishments for bullying gave students license to act with impunity" and "would reasonably be expected to embolden them to continue to escalate their abuse," thereby increasing the risk of harm to Plaintiff, forming a state-created danger, and violating Plaintiff's substantive due process rights. *See Shively v. Green Loc. Sch. Dist. Bd. of Educ.*, 579 F. App'x 348, 356 (6th Cir. 2014).

89.     Defendants Hind, Quinn, and Christian, through their deliberate indifference to the harassment described herein, violated Plaintiff's clearly established constitutional rights of which a reasonable person would have known. They are therefore not entitled to qualified immunity.

### COUNT IV
### *Monell* Liability
### 42 U.S.C. 1983
### *As to Defendant NPS*

90.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

91.     42 U.S.C. 1983 protects against the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by persons acting under the color of law.

92.     Plaintiff suffered a deprivation of his constitutional rights to equal protection of the laws and substantive due process of law, as described herein.

93.     The District had actual and constructive notice of the deprivation of Plaintiff's constitutional rights.

94.     District officials responsible for establishing final policy with respect to bullying and harassment, including, but not limited to, Defendants Hind, Quinn, and Christian made deliberate choices to follow a course of action (or inaction) in response to Plaintiff's reports of racial threats and harassment. Defendants tacitly

approved the racial threats, bullying, and harassment by failing to enforce the District's anti-harassment policies.

95.    Defendant NPS is responsible for the deprivation of Plaintiff's constitutional rights because the individual Defendants' actions were taken pursuant to an official policy or custom maintained by the District.

96.    The individual Defendants' conduct was based on a clear and persistent pattern of violating constitutional rights, and the District's policy, practice, and custom was the moving force behind the deprivation of Plaintiff's constitutional rights described herein. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).

## COUNT V
## Hostile Educational Environment in Violation of the Elliott-Larsen Civil Rights Act
## M.C.L 37.2301 *et seq.*

97.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

98.    Michigan's Elliott-Larsen Civil Rights Act ("ELCRA") provides that an educational institution may not "[d]eny an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of…race." M.C.L. 37.2402(a).

99.    Because schools stand *in loco parentis* to offending students, schools may be vicariously liable for hostile educational environment discrimination arising

from student-on-student harassment. *Doe by next friend Kolokithas v. Alpena Pub. Sch. Dist.*, No. 359190, 2022 WL 17868146, at \*5 (Mich. Ct. App. Dec. 22, 2022).

100.   Defendant NPS is an educational institution as defined by the Elliott-Larsen Civil Rights Act, MCL 37.2301, and MCL 37.2401.

101.   Defendant Hind is a "person" as defined by the ELCRA.

102.   Defendant Quinn is a "person" as defined by the ELCRA.

103.   Defendant Christian is a "person" as defined by the ELCRA.

104.   Plaintiff is a member of a protected class due to his race.

105.   Plaintiff was subjected to racial harassment that was so severe, pervasive, and objectively offensive that it unreasonably interfered with Plaintiff's education and created an intimidating, hostile, and offensive educational environment.

106.   Defendants had actual knowledge of the racial harassment described herein.

107.   Defendants failed to adequately investigate or take prompt or appropriate remedial action upon notice of the hostile educational environment.

108.   Defendants violated the Elliott-Larsen Civil Rights Act and deprived Plaintiff of his civil rights by their acts and omissions in response to the ongoing racially harassing conduct and communication to which he was subject, which had

the purpose and/or effect of denying him the full benefit of an NPS education and full and equal access to educational opportunity.

**COUNT VI**
**Denial of Equal Access to Public Accommodations**
**in Violation of the Elliott-Larsen Civil Rights Act**
**M.C.L. 37.2302(a) et seq.**

109.   Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

110.   Michigan's Elliott-Larsen Civil Rights Act provides that a person may not "[d]eny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status." M.C.L. 37.2302(a).

111.   Defendant NPS is a place of public accommodation as defined by the Elliott-Larsen Civil Rights Act.

112.   The individual Defendants are all "persons" as defined by the ELCRA.

113.   Plaintiff is a member of a protected class due to his race.

114.   Plaintiff was subjected to racial harassment that was so severe, pervasive, and objectively offensive that it resulted in the denial of equal access to a place of public accommodation.

115.   Defendants had actual knowledge of the racial harassment described herein.

116.  Defendants failed to adequately investigate or take prompt or appropriate remedial action upon notice of the racial harassment described herein.

117.  Defendants violated the Elliott-Larsen Civil Rights Act and deprived Plaintiff of his civil rights by their acts and omissions in response to the ongoing racially harassing conduct and communication to which he was subject, which had the purpose and/or effect of denying him full and equal access to the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service.

## COUNT VII
### Intentional Infliction of Emotional Distress
### *As to Defendants Hind, Quinn, and Christian*

118.  Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

119.  The individual Defendants' conduct, described above, was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

120.  The individual Defendants' conduct amounted to intentional infliction of emotional distress and caused damages to Plaintiff as described herein.

## COUNT VIII
### Gross Negligence
### *As to Defendants Hind, Quinn, and Christian*

121.   Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

122.   The individual Defendants' conduct, described above, was "so reckless as to demonstrate a substantial lack of concern for whether an injury results", constituting gross negligence under Michigan law. MCL 691.1407(8)(a).

123.   Defendants are therefore not entitled to governmental immunity.

124.   The individual Defendants' conduct, described above, was a direct and proximate cause of injury to Plaintiff described herein.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

   a.   find that Defendants discriminated against Plaintiff in violation of Title IV, 42 U.S.C. § 1983, and the Elliott-Larsen Civil Rights Act;

   b.   award Plaintiff compensatory damages, including damages for mental anguish, pain and suffering, and humiliation;

   c.   award Plaintiff punitive damages;

   d.   award Plaintiff reasonable attorneys' fees and costs; and

   e.   award Plaintiff such other relief as this Court deems necessary and proper.

Respectfully Submitted,

**NACHTLAW, P.C.**

*/s/ David A. Nacht*
David A. Nacht
*Attorneys for Plaintiff*
501 Avis Dr, Ste. 3
Ann Arbor, MI 48108
(734) 663-7550

Dated: October 30, 2024

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JERLON BURRELL,

       Plaintiff,                          Case No.:
                                                 Hon:

   v.

NORTHVIEW PUBLIC SCHOOLS,
WEST OAKVIEW ELEMENTARY SCHOOL,
CHRISTINA HINDS, *in her individual*
*capacity and official capacity as Northview*
*Publics Schools Superintendent*; TONY QUINN,
*in his individual capacity and official*
*capacity as West Oakview Elementary Principal*; and
TIM CHRISTIAN, *in his individual capacity and official*
*Capacity as Northview*
*Publics Schools Director of Facilities and Transportation*

       Defendants.

---

David Nacht (P47034)
NACHTLAW, P.C.
Attorney for Plaintiff
501 Avis Dr., Ste. 3
Ann Arbor, MI 48108
734-663-7550
dnacht@nachtlaw.com

---

## PLAINTIFF'S JURY DEMAND

NOW COMES Plaintiff, Jerlon Burrell, by and through his attorneys, NACHTLAW, P.C., and hereby demands a trial by jury in the above-captioned matter for all issues so triable.

                        Respectfully Submitted,

NACHTLAW, P.C.

*/s/ David A. Nacht*
David A. Nacht
*Attorneys for Plaintiff*
501 Avis Dr, Ste. 3
Ann Arbor, MI 48108
(734) 663-7550

Dated: October 30, 2024